IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DEBORAH BROWN, Individually and on
Behalf of her Minor Children, H.B. and
B.S.,**
         **Plaintiff,**

v.         Civ. No. 09-1058 JCH/ACT

**UNITED STATES OF AMERICA,**
         **Defendant.**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant United States of America's *Motion to Dismiss and/or for Summary Judgment*, filed December 23, 2010 [Doc. 82]. After carefully considering the motion, briefing,[1] and relevant law, and being otherwise fully informed, the Court finds that Defendant United States of America's motion is well taken and should be GRANTED.

### BACKGROUND

The tragic events giving rise to this case occurred on June 10, 2007, when Jeremy Brown ("Brown") twice shot his estranged wife, Plaintiff Deborah Brown, before turning his gun on himself and committing suicide.[2] At the time of the shooting, Brown worked as a police officer for the Pueblo of Laguna Police Department ("LPD"). On the day of the shooting, Brown was neither on call nor on duty. Although not authorized to do so, he took his assigned police unit to

---

[1] Following a hearing held on April 14, 2011, the Court granted Plaintiff leave to file a surreply [Doc. 107] and allowed Defendant to file a response to Plaintiff's surreply [Doc. 108]. The Court has considered this additional briefing in rendering its decision.

[2] The facts of this case are largely undisputed. Where disputes arise, they will be noted. However, for the reasons later discussed, most of the factual disputes do not ultimately play a role in the outcome.

Plaintiff's residence in McIntosh, New Mexico, which is located outside of the boundaries of the Pueblo of Laguna. Once there, Brown used his service weapon to shoot his estranged wife and himself.

For several months prior to the incident, Brown had been despondent over the breakdown of his marriage to Plaintiff. This despondency worsened in the weeks leading up to the incident, to the point that Brown expressed suicidal ideation. Brown took leave from his job from May 16 through May 25, 2007. On May 17, 2007, Plaintiff accompanied Brown to Kaseman Presbyterian Hospital ("Kaseman") where he voluntarily sought admission for his severe depression and suicidal thoughts. According to medical records from the May 17 hospital visit, Brown had been expressing suicidal ideation for approximately two weeks, and specifically planned to use his service weapon to take his life. *See* Ex. 4, attached to Pl. Resp. [Doc. 87] at 1. The record is unclear as to how long Brown was at Kaseman on his initial visit, or under what circumstances he was released. However, on May 21, 2007, Brown again checked himself into Kaseman and medical records indicate that he continued to experience suicidal thoughts. *See id*. at 2-3. Brown stayed at Kaseman from May 21 through May 23, 2007. The Acting Chief of Police of the Pueblo of Laguna Police Department, Michelle Ray ("Acting Chief Ray"), was aware that Brown had been admitted to Kaseman during this time, but claims that she was not informed of the exact nature of Brown's medical problems prior to the shooting. Conversely, Plaintiff contends that either Acting Chief Ray or some other supervisor at the LPD was advised of the specific problems that led to Brown's hospitalization. On May 23, Brown was discharged from Kaseman and received a release from his healthcare provider, Dr. Robert Kellogg, to return to full duty, without restrictions, on May 26, 2007. *See* Ex. 4, attached to Deft. Mot. [Doc. 82], at 4.

Plaintiff contends that, following his hospitalization, Brown should never have been

allowed back to work, where he had access to his duty weapon, without being administered a full independent fitness for duty examination by a qualified mental healthcare professional specially trained in evaluating the fitness for duty of emotionally disturbed law enforcement officers. Plaintiff contends that failure to require such an examination prior to allowing Brown to return to duty violated standard and recognized law enforcement procedures and constituted negligence on the part of the LPD.  Defendant argues that the LPD has no requirement that an officer such as Brown be referred for a fitness for duty evaluation, and that no federal law or regulation mandates such a requirement.

Plaintiff's suit is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  Defendant has moved to dismiss the case or for summary judgment on three bases: (1) at the time of the incident, Brown was not acting as a federal law enforcement officer, so that the exception to the waiver of sovereign immunity for certain intentional torts contained in 28 U.S.C. § 2680(h) applies to prevent a claim; (2) because the negligence claims raised by Plaintiff are considered to have arisen out of the assault and battery by Brown, they are likewise barred by 28 U.S.C. § 2680(h); and (3) Plaintiff's claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).[3]

## LEGAL STANDARD

---

[3] In its Motion to Dismiss and/or for Summary Judgment, Defendant also argues that some of Plaintiff's claims must fail because Brown was not acting in the scope of his employment at the time of the incident.  *See* Deft. Mot. [Doc. 82] at 2.  Plaintiff agrees that any claims that Brown was acting within the scope and course of his authority should be dismissed.  *See* Pl. Resp. [Doc. 87] at 2-3.  Therefore, the Court will not discuss this issue.  In addition, while Plaintiff's First Amended Complaint [Doc. 25] asserts constitutional tort claims against the United States and claims against Acting Chief Ray in her individual and official capacities, these claims have since been dismissed for lack of subject matter jurisdiction.  *See* Docs. 39 and 75.

Defendant has moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. In general, a plaintiff bears the burden of demonstrating this Court's jurisdiction to hear her claims. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-89 (1936). This holds true as well when the United States is a defendant, *i.e.*, a party bringing suit against the United States bears the burden of proving that the government has waived its sovereign immunity. *See James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992). Under the doctrine of sovereign immunity, the United States is immune from suit except to the extent that it has consented to be sued. *See Smith v. United States*, 507 U.S. 197, 200 (1993). The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Because the FTCA constitutes a waiver of the United States' immunity, its provisions must be strictly construed. *See Hart v. Dep't of Labor ex rel. United States*, 116 F.3d 1338, 1339 (10th Cir. 1997). When the United States has waived its immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend the waiver beyond that which Congress intended." *Smith*, 407 U.S. at 203. Whether or not the Government has consented to a particular type of suit is a threshold jurisdictional issue and, if a court concludes that the United States has not waived its immunity to suit in a particular matter, the court does not have jurisdiction to hear the case, and it must be dismissed under Fed. R. Civ. P. 12(b)(1). *See Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993).

When reviewing a challenge to its subject matter jurisdiction, the Court does not assume the truthfulness of the complaint's factual allegations, but instead has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Thus, a Rule 12(b)(1) motion, unlike a Rule 12(b)(6)

4

motion, can include references to evidence extraneous to the complaint without converting it to a Rule 56 summary judgment motion. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987). However, a Rule 12(b)(1) motion must be converted to a Rule 56 motion "when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F.3d at 1003. The jurisdictional question is considered intertwined with the merits of the case when the court's subject matter jurisdiction is conditioned upon the same statute that provides the substantive claim in the case. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 978 (10th Cir. 2002). In this case, the jurisdictional and substantive issues are both dependent upon the FTCA and are inextricably intertwined, requiring resolution of whether Brown was a federal law enforcement officer and whether Plaintiff's negligence claims arise out of her assault. Thus, the Court will treat this as a motion for summary judgment pursuant to Rule 56. *See Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997).

     Summary judgment is appropriate if "the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986); *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997); Fed. R. Civ. P. 56(c). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256. Once the moving party has met its burden, the non-moving party must do more than merely show that there is some doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477

U.S. at 248, 256. Although the Court views the evidence and draws all inferences in the light most favorable to the party opposing summary judgment, that party still "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Anderson*, 477 U.S. at 248.

## ANALYSIS

The FTCA gives federal district courts jurisdiction over claims for money damages against the United States "for injury or loss of property...caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, this broad grant of jurisdiction is subject to several limitations. One of these limitations is found in 28 U.S.C. § 2680(h), which provides that the United States retains its sovereign immunity with respect to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." This limitation to jurisdiction is subject to its own exception, namely that "with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising...out of assault, battery, [and other enumerated intentional torts]." *Id*. For purposes of this exception, "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

    A.    <u>Was Brown a Federal Law Enforcement Officer?</u>

Defendant argues that, because the exception to the general prohibition against jurisdiction for claims arising out of assault and battery extends only to "acts or omissions of investigative or law enforcement officers of the United States Government," and Brown does not fit within that description, the United States has not waived sovereign immunity and this Court does not have jurisdiction. Defendant contends that Brown was not serving as a law enforcement officer of the United States for purposes of section 2680(h) at the time of the incident because of the type of contract under which he was performing services for the Pueblo of Laguna.

The Pueblo of Laguna law enforcement program operates, in part, pursuant to an Indian Self-Determination and Education Assistance Act ("ISDEAA") contract with the Bureau of Indian Affairs ("BIA"), an agency of the United States. *See* Def't. Mot. at 2 (statement of undisputed material fact no. 1); Fiscal Year 2007 Annual Funding Agreement, Contract No. CTM21T70748, attached as Ex. 1 to Deft. Mot. [Doc. 82]. The ISDEAA strives to increase tribal participation in the management of federal Indian programs and activities by providing that tribes may enter into self-determination contracts with federal agencies to administer programs or services that would otherwise have been administered by the federal government. *See* 25 U.S.C. §§ 450, 450a.

In general, Congress has extended FTCA coverage to tribal employees acting in the scope of their employment while carrying out a self-determination contract. *See* 25 U.S.C. § 450f(d). However, simply because an officer is a federal employee for purposes of the FTCA, it does not follow that he is automatically a "law enforcement officer of the United States Government" for purposes of the intentional tort exception of section 2680(h). This is because "[n]othing in the ISDEAA, or in relevant case law, suggests that the mere existence of a [self-determination] contract between the BIA and a tribe for the provision of law enforcement services automatically

confers federal law enforcement authority upon the officers in tribal police departments," and, without the authorization to enforce federal law, "tribal officers are not federal investigative or law enforcement officers." *Trujillo v. United States*, 313 F. Supp. 2d 1146, 1150 (D.N.M. 2003) (citing *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000)).

Instead, a tribal law enforcement officer operating pursuant to a BIA contract is considered a federal investigative or law enforcement officer for purposes of section 2680(h) only if such officer has been issued a special law enforcement commission ("SLEC") by the BIA. *See Henin v. Cancel*, 708 F. Supp. 2d 1315, 1319 (S.D. Fla. 2010); 25 C.F.R. § 12.21 (stating that "[t]ribal law enforcement officers operating under a BIA contract or compact are not automatically commissioned as Federal officers," and describing the method under which SLECs are issued). As part of its evidence that jurisdiction is lacking in this case, Defendant presented the Declaration of Dan Brueninger, who serves as the Special Agent in Charge of District IV of the Office of Justice Services within the Bureau of Indian Affairs, and who is responsible for issuing SLECs for tribes within District IV, including Laguna Pueblo. *See* Declaration of Dan Breuninger, attached as Ex. 4 to Def't. Mot. [Doc. 82] at 1 ¶ 2. Tribal officers without SLECs are not authorized to execute searches, seize evidence, or make arrests for violations of federal law absent specific authorization to do so. *See id*. at 1-2 ¶ 5. Mr. Brueninger affirmed under penalty of perjury that Officer Brown did not possess an SLEC at the time of the incident nor prior to the incident. *See id*. at 1 ¶ 4.

Plaintiff has failed to produce evidence to controvert this Declaration. Plaintiff points to a Department of Veterans Affairs Police Officer Appointment identification card, dated May 13, 2003, which states that Brown was "authorized to enforce Federal laws and VA rules promulgated under the authority of Title 38 U.S.C. 901 & 902 on property under the charge and

control of the Department of Veterans Affairs." *See* Pl. Resp. [Doc. 87] at 4 (citing Ex. 1 to Pl. Resp.). Brown's previous authorization to enforce federal laws on property under the control of the Department of Veterans Affairs has no bearing on the question of whether the BIA issued Brown a special commission to enforce federal law pursuant to 25 C.F.R. § 12.21.

    Plaintiff's attempts to create a question of fact by citing Brown's job application with the LPD and Acting Chief Ray's background check memorandum regarding Brown are similarly unavailing. Acting Chief Ray's background check memorandum, dated January 31, 2007, notes that "[w]hen he left this department the previous times, he was not certified. He is now certified and I feel that he would greatly benefit the department and the pueblo." Ex. 2 to Pl. Resp. at 2. Similarly, on Brown's application for employment with the LPD, in a section listing experience, skills, and qualifications, Brown included the term "federally certified." *See* Ex. 3 to Pl. Resp. However, SLECs are issued on a case-by case basis to tribal law enforcement officers operating pursuant to a BIA contract or compact, and only after a "Federal agency completes an agreement with the Commissioner of Indian Affairs asking that BIA issue delegated commissions." 25 C.F.R. § 12.21. At the time he applied for the LPD position and Acting Chief Ray wrote her background memorandum, Brown was not employed by the LPD or any other tribal department. Thus, the type of "certification" referred to in the documents cited by Plaintiff could not have been an SLEC, which is issued on a case-by-case and tribe-specific basis. Therefore, Plaintiff has failed to come forward with evidence to create a triable question of fact regarding whether Brown was acting as a federal law enforcement officer at the time of the incident. Because Plaintiff has not demonstrated that Brown was an "investigative or law enforcement officer" for purposes of 28 U.S.C. § 2680(h) at the time of the incident, his actions do not fall within the exception to the general prohibition against jurisdiction for claims arising out of assault and battery.

Plaintiff argues that Brown's status is irrelevant, because her claims are not directed at him, but rather are directed against Acting Chief Ray and other LPD supervisors, and Defendant cannot demonstrate that Acting Chief Ray and the other LPD supervisors were not federal law enforcement officers.  *See* Pl. Resp. at 8.  However, this argument is misguided.  The "law enforcement officer" exception contained in section 2680(h) applies only to *intentional* torts committed by federal law enforcement officers.  *See United States v. Shearer*, 473 U.S. 52, 56 (1985) (in 1974, Congress amended section 2680(h) to waive sovereign immunity for claims arising out of the intentional torts of law enforcement officers).  Plaintiff's claims directed against Acting Chief Ray and other LPD supervisors sound in negligence rather than intentional tort, and therefore do not fall within the law enforcement officer exception to section 2680(h).  Therefore, their status is irrelevant to the question of the Court's jurisdiction.  Because the law enforcement exception for intentional torts cannot provide jurisdiction for Plaintiff's negligence claims, the Court must next determine whether her negligence claims are barred because they "arise out of" an assault and battery.

      B.     <u>Do Plaintiff's  Claims Arise out of Assault and Battery?</u>

At issue in this case is the scope of section 2680(h)'s exception to the FTCA's waiver of sovereign immunity involving claims arising out of certain enumerated torts such as assault and battery.  The question the Court must answer is whether this exception applies when Plaintiff's claim is not directly based on the assault and battery itself, but rather is based on the allegedly negligent failure to prevent the assault and battery that led to Plaintiff's injury.  The Supreme Court addressed this question in *United States v. Shearer*, 473 U.S. 52, 55 (1985), in which it determined that the survivor of a serviceman, who was murdered by another serviceman, could not recover from the Government under the FTCA for negligently failing to prevent the murder.

In a plurality opinion, the *Shearer* Court held that "[the claimant] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery [because] [s]ection 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." 473 U.S. at 55 (emphasis in original). The following year, the Tenth Circuit applied this decision in *Hoot v. United States*, 790 F.2d 836, 838-39 (10th Cir. 1986). *Hoot* concerned a case in which the Army allegedly refused to provide psychiatric care for a service member who had sought mental health treatment on several occasions and whose behavior sufficiently alarmed supervisors that they limited his access to weapons. The Tenth Circuit, relying in part on *Shearer*, held that the claimant, who was severely assaulted by the service member, could not bring a negligence claim against the Government for failing to stop her attack because her claim arose out of an assault and battery and was therefore barred by section 2680(h). *See* 760 F.2d at 839.

Subsequent to *Shearer* and *Hoot*, the Supreme Court narrowed slightly *Shearer*'s absolute preclusion of negligence claims against the United States that stem from an assault or battery. *See Sheridan v. United States*, 487 U.S. 392, 400-03 (1988). Plaintiff contends that *Sheridan* should be applied to the instant case to create jurisdiction under the FTCA. *See* Pl. Resp. [Doc. 87] at 8-9. *Sheridan* concerned a visibly intoxicated service member who fired a rifle into a vehicle driven by the plaintiffs on a public street, causing injury. Earlier on the evening of the shooting, three naval corpsmen had observed the assailant in a drunken stupor on the floor of a naval hospital building. *See* 487 U.S. at 395. When they attempted to take him to the emergency room, the assailant broke away, grabbing the bag he had with him and revealing the barrel of a rifle. *See id*. When they saw the rifle barrel, the corpsmen fled, neither taking action to subdue the assailant nor alerting authorities that the service man was heavily intoxicated and brandishing

11

a rifle. *See id*. The *Sheridan* Court found that, in doing so, the corpsmen negligently executed the responsibility they had voluntarily assumed over the intoxicated assailant and violated the requirement that all personnel report the presence of firearms on the naval base, as all firearms were allegedly prohibited on base. *See id*. at 401. The *Sheridan* Court allowed the plaintiffs' suit to stand, holding that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Id*. In doing so, the *Sheridan* Court reasoned that "it seems perfectly clear that the mere fact that [the assailant] happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if [the assailant] had been an unemployed civilian patient or visitor at the hospital." *Id*. at 402. In other words, "in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the assailant] was on a federal payroll." *Id*.

The Tenth Circuit has recognized that *Sheridan* did not overrule *Shearer*; it merely provided an "important qualification" to "the *Shearer* plurality's general analysis of 2680(h) [which] appears to remain the prevailing view." *Franklin v. United States*, 992 F.2d 1492, 1498 (10th Cir. 1993). Thus, the Tenth Circuit views *Sheridan* as only applying to cases in which "a negligence claim against the government arises out of an incident of battery but is in no way contingent on the perpetrator's federal employment status, *i.e.*, when the government's liability is based on a breach of a duty owed the victim that is independent of its relationship, if any, to the perpetrator." *Franklin*, 992 F.2d at 1498. In all other cases that allege negligence by the Government arising from an assault or battery committed by a Government employee, such

claims are still barred by section 2680(h).  *See id.*  *See also Martinez v. United States*, 311 F. Supp. 2d 1274, 1278-79 (D.N.M. 2004) (claim for negligent supervision arising out of alleged rape by Laguna Police Officer was barred by section 2680(h) based on reasoning in *Shearer*); *Vallo v. United States*, 298 F. Supp. 2d 1231, 1239-42 (D.N.M. 2003) (claim for, *inter alia*, negligent supervision arising out of sexual assault and battery by detention officer at Laguna Pueblo Corrections Center barred by section 2680(h) based on *Shearer*).

Plaintiff argues that *Sheridan* should apply to create jurisdiction for Plaintiff's claim because "Defendant has gone to great lengths to establish that the assault was not related to Officer Brown's employment status" as he was not acting in the scope of his employment at the time of the incident.  *See* Pl. Resp. at 9.  This argument misinterprets *Sheridan*.  The question at issue in *Sheridan* was not whether the perpetrator was acting in the scope of his employment when committing the tort, but rather whether the obligation allegedly owed by the Government to the victim stemmed from the Government's relationship to the perpetrator or was independent of any relationship to the perpetrator.  In this case, any obligation owed by the LPD to Plaintiff is based solely upon Brown's status as a federal employee.  Plaintiff alleges that Defendant was negligent in failing to remove Brown from duty until he received a full fitness for duty examination, failing to require that Brown relinquish his badge, service weapon, and police unit, and failing to order Brown to stop performing any law enforcement activities.  *See* First Amended Complaint [Doc. 25] at 4 ¶ 17.  Unlike *Sheridan*, where the Government owed the same duty to the plaintiffs regardless of whether the assailant was a service member or a private citizen, Defendant's alleged obligations in this case arise directly as a result of being Brown's employer and supervisor.  Thus, under the current state of the law as stated in *Shearer* and *Franklin*, Plaintiff's claim is barred by section 2680(h) and must be dismissed for lack of subject matter

jurisdiction.

Because the Court finds that the Tenth Circuit's interpretation of section 2680(h) bars Plaintiff's claim, it need not reach Defendant's argument that Plaintiff's claim is also barred by the discretionary function exception to the FTCA, found in 28 U.S.C. § 2680(a).  Therefore, it need not address the question of whether Defendant was negligent in relying on the release from Brown's healthcare provider allowing him to return to full duty, without restrictions.  Even if such a decision was negligent, because the Court must strictly construe any waiver of sovereign immunity, the Court finds that it does not have jurisdiction to consider this matter and the claims must be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant United States of America's *Motion to Dismiss and/or for Summary Judgment* [Doc. 82] is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**